# DAVIDSON *v.* WIGHT.

CONSTITUTIONAL LAW; CONDEMNATION; TAXATION; SPECIAL
   ASSESSMENTS; SPECIAL BENEFITS; NOTICE OF ASSESSMENT.

1. The act of Congress of March 3, 1899 (30 Stat. 1344), for the con-
   demnation of land for the opening of certain streets in the
   city of Washington, providing that not less than one-half of
   the damages awarded for the land condemned shall be
   assessed against the land which will be benefited by the open-
   ing of the streets, is unconstitutional and void, as it arbi-
   trarily prescribes a minimum limit below which the assessment
   for special benefits may not fall, while the only proper limit
   of such an assessment is the value of the special benefit which
   has accrued to the owner of the land from the public improve-
   ment adjacent to his property.

2. Where in condemnation proceedings under that act, which pro-
   vides that the land necessary for the opening of the streets
   shall be condemned, provided the owners of a tract of land
   specified shall dedicate the land in their tract contained within
   the lines of the said streets, notice by newspaper publica-
   tion only is given of the pendency of such proceedings, until
   after the verdict and award of the jury, when a copy of an
   order of confirmation *nisi* directing that the verdict, award
   and assessment shall stand confirmed unless cause to the con-
   trary is shown within a time limited, is served upon such
   owners, such notice will not be deemed a seasonable notice to
   such owners at a serviceable stage of the proceedings, and an
   assessment of special benefits against their land is void even
   though prior to such proceedings they dedicated the portion
   of their land called for by the act, and must have known that
   the suit would necessarily follow.

3. The appearance of some of the owners of such tract before the
   jury in the condemnation proceedings as witnesses sum-
   moned on behalf of the District of Columbia, will not consti-
   tute a waiver of notice on the part of the owners of the tract;
   and a statement in the return of the marshal that the owners
   of the tract in question were represented before the jury, is
   not sufficient evidence of that fact, when expressly denied in
   affidavits by the persons who were supposed to have appeared
   as such representatives.

4. The fact that the act of March 3, 1899, for the condemnation of land
   for the opening of certain streets, directs that such proceed-
   ings be had in the Supreme Court of the District of Columbia

sitting as a District Court of the United States, does not justify the substitution of notice to the land owners interested by publication in place of personal service of process.

No. 958. Submitted April 5, 1900. Decided April 25, 1900.

HEARING on an appeal by certain land owners from an order of the Supreme Court of the District of Columbia, sitting as a District Court of the United States, confirming a verdict, award and assessment for alleged benefits in a proceeding for the opening and extension of certain streets. *Reversed.*

The COURT in its opinion stated the case as follows :

This is an appeal from an order or decree of the Supreme Court of the District of Columbia confirming an assessment upon lands of the appellants, Charles H. Davidson and Albert A. Wilson and John B. Larner, trustees, for alleged benefits accruing from the opening of certain streets adjoining such lands.

By an act approved March 3, 1899, entitled "An act to extend S street, in the District of Columbia, and for other purposes," (30 Stat., p. 1344), the Congress of the United States provided that, within thirty days after the passage of the act, the Commissioners of the District should "institute by a petition in the Supreme Court of the District, sitting as a district court, a proceeding to condemn the land necessary to open and extend S, Twenty-second, and Decatur streets through lots 41 and 42 of Phelps and Tuttle's subdivision of Connecticut Avenue Heights, part of Widow's Mite; *provided,* that the owners of the 'Kall' tract should dedicate the land in said tract contained within the lines of said streets; *and provided further,* that of the amount found due and awarded as damages for and in respect of the land condemned under this section for the opening of said streets, not less than one-half thereof shall be assessed by the jury in said proceedings against the pieces or parcels of ground situate and lying on each side of the extension of said streets, and

also on all or any adjacent pieces or parcels of land which will be benefited by the opening of said streets as herein provided."

The act further provided that the proceedings for condemnation should be under and in accordance with chapter 11 of the Revised Statutes of the United States relating to the District of Columbia; that the sum to be assessed against each parcel of ground should be determined by the jury; and that each assessment should be a lien upon the land assessed, and payable in five equal instalments, with interest at the rate of 4 per centum per annum.

In pursuance of the act the Commissioners of the District filed a petition in the Supreme Court of the District, setting forth in substance the provisions of the act and averring that the owners of the Kall tract had dedicated to the District of Columbia for the purpose of a highway the land in said tract contained within the streets proposed to be extended; and they prayed for process and such further proceedings as were contemplated by the act of Congress. There was no personal service of process upon any of the parties in interest; but on April 3, 1899, the court made an order directing that all persons in interest should appear in court before the —— day of that month, and show cause, if any they had, why the prayer of the petition should not be granted. And it directed publication of the order in three specified newspapers published in the city of Washington. The record contains evidence of publication in two of these three newspapers, but not in the third. It is conceded, however, in the brief filed on behalf of the appellants that due proof of the publication was made as required by the terms of the order.

The next step in the case, so far as the record discloses, appears to have been taken on July 21, 1899, when, on motion of counsel for the Commissioners, the court made an order directing the marshal to summon a jury of seven disinterested persons not related to any party interested in the

proceeding, "to be and appear upon the premises described
in the petition herein, on a day specified, to assess the dam-
ages, if any, which each owner of land may sustain by rea-
son of the condemnation of the land necessary to open and
extend S, Twenty-second, and Decatur streets through lots
41 and 42 of Phelps and Tuttle's subdivision of Connecticut
Avenue Heights, part of Widow's Mite, as prayed in said
petition, and of the amount found due and awarded as
damages by said jury in respect of the land condemned for
the opening of said streets, not less than one-half thereof
shall be assessed by said jury against the pieces or parcels
of ground situated and lying on each side of the extension
of said streets, and also on any and all adjacent pieces or
parcels of land which will be benefited by the opening of
said streets, and to further proceed in accordance with the
act of Congress approved March 3, 1899, entitled 'An act to
extend S street in the District of Columbia and for other
purposes.'" The latter part of this order, as will be per-
ceived, repeated the specific language of the act of Congress.

Next follows a return made by the marshal of the pro-
ceedings had under this order. He recites that he sum-
moned a jury of seven persons, whose names he gives; that
these persons were sworn and appeared on the premises on
August 24, 1899; that they adjourned to meet next day at
the city hall to take testimony in the case; that on August
25, 1899, they took testimony; that on August 28, 1899,
they heard evidence and argument of counsel, A. B. Duvall,
Esq., appearing on behalf of the Commissioners, J. J. Dar-
lington, Esq., on behalf of Mr. Leroy Tuttle, and W. Riley
Deeble representing the Kall tract; that Leroy Tuttle, the
owner of the tract to be condemned, had been personally
summoned and was present before the jury with his coun-
sel; and that the jury, on August 30, 1899, returned their
verdict, which the marshal therewith transmitted to the
court. In this verdict the jury found the value of the prop-
erty to be taken, being about 33,429 square feet, to be of

the value of $52,000, and assessed that sum as the amount of damages to be paid as compensation to the owner. At the same time they assessed benefits to the amount of $26,000 on adjacent lots, of which the sum of $10,800 was assessed on Tuttle's remaining property, the sum of $14,000 on four several parcels of the Kall tract held by the appellants as trustees, and an aggregate sum of $1,200 on twelve other pieces of land in the vicinity.

Upon this return of the marshal and verdict of the jury, the court on September 19, 1899, entered an order of confirmation *nisi*, directing that the verdict, award, and assessment should stand confirmed, unless cause to the contrary were shown on or before October 4, 1899; also, that copies of the order *nisi* should be published in certain specified newspapers in the city of Washington, and that a copy of the order should be personally served by the marshal on all the owners of the land condemned and on all the owners of the land assessed in the verdict, who could be found within the District; and if they could not be found, that a copy should be mailed to their place of abode or last known place of residence.

The appellants were duly served with this notice; and they came in and filed exceptions to the confirmation of the award and finding of the jury. The grounds of objection, as stated, were that the statute did not warrant any assessment against the Kall tract; that the statute was unconstitutional inasmuch as it provided for no adequate notice to the persons to be assessed; that the statute under which the assessment was made provided for condemnations only, and not for assessments; that the act of March 3, 1899, taken in connection with the provisions of the Revised Statutes under which the proceedings were had, is inconsistent and incapable of enforcement as to assessments for benefits; that the description of the property sought to be charged with the assessments was defective; and that the award was excessive, unjust and unreasonable. And there-

upon they requested that a new jury should be impanneled, in accordance with section 263 of the Revised Statutes of the United States relating to the District of Columbia. The appellants also filed with their exceptions an affidavit of W. Riley Deeble and an affidavit of John C. Davidson, both of whom had appeared as witnesses before the jury for the petitioners, and of whom one W. Riley Deeble was stated in the marshal's return to have appeared on behalf of the owners of the Kall tract. From these affidavits it appeared that neither Deeble nor Davidson, although each owned an equitable undivided interest in the Kall tract, appeared before the jury to represent that tract or its owners.

The exceptions to the award and findings of the jury were overruled; and the court ratified and confirmed the verdict, award, and assessment. From the order of ratification the present appeal has been prosecuted.

*Mr. Benjamin F. Leighton* for the appellants:

1. To constitute due process of law, the statute authorizing the assessment must contain in itself provision for notice to the parties whose property is to be assessed, either in express terms or by necessary implication; and the notice must be of such a character as to afford the parties whose interests are affected opportunity to be heard before the assessment becomes final. The hearing must be before a tribunal capable of making corrections and rectifying errors; otherwise the notice itself is vain and nugatory, and as much a violation of constitutional right as though no notice of any character were provided by law. *Stuart* v. *Palmer*, 74 N. Y. 183; *In re McPherson*, 104 N. Y. 321; *Remsen* v. *Wheeler*, 105 N. Y. 579; *Norwood* v. *Baker*, 172 U. S. 269, in which *Spencer* v. *Merchant*, 125 U. S. 345, in so far as that case is in conflict with the doctrine of *Stuart* v. *Palmer*, is overruled. See, also, *Brown* v. *Denver*, 7 Col. 312; *Ullman* v. *Mayor*, 72 Md. 587; *Allman* v. *Dist. of Col.*, 3 App. D. C. 20; *Davidson* v. *New Orleans*, 96 U. S.

97; *Santa Clara Co.* v. *Railroad Co.*, 18 Fed. Rep. 385; *Cupp* v. *Seneca Co.*, 19 Ohio St. 173; *Railroad* v. *Smith*, 78 Ill. 98; *Powers* v. *Bears*, 12 Wis. 245; *Mulligan* v. *Smith*, 59 Cal. 219; *Owners* v. *Albany*, 15 Wend. 375; *In re Middletown*, 82 N. Y. 196; *Bauman* v. *Ross*, 167 U. S. 557. All of the cases upon the subject of notice, reviewed by the court in this last case, contained an express provision for notice to the owners of the property to be assessed, and opportunity to be heard before the assessment became final. Even where notice is required by statute, and the mode of service is not specified, the law requires that it shall be personal. *Railroad Co.* v. *Smith, supra*; *Pennoyer* v. *Neff*, 95 U. S. 719. Statutes derive their vitality and effectiveness from the legislature, and not from the courts; that is not statutory law which derives its effective energy from any other source than the legislative will. *Rice* v. *Foster*, 4 Harrington, 479; *Johnson* v. *Rich*, 9 Barb. 680; *Thorne* v. *Cramer*, 15 Barb. 112; *Barto* v. *Himrod*, 8 N. Y. 483; *Parker* v. *Con.*, 6 Penna. 507.

2. The order of April 3, 1899, warning all persons interested in the proceedings to appear in court, on the day named, to show cause why the prayer of said petition should not be granted, was based upon no statutory authority, and is, for that reason, simply void. For a like reason, the order of September 19, 1899, directing personal service of the verdict of the jury assessing the appellant's land, is void and nugatory. Had the statute expressly provided for service of personal notice, at this stage of the proceedings, and under the conditions existing in this case, it would have failed to have imparted validity to this assessment. It was too late to be effective. *Allman* v. *Dist. of Col., supra*. The court was without power to correct error, if error there were, in the finding of the jury. It could confirm or reject the verdict of the jury, and there its power stopped. Hearing, in the legal sense of the term, there could not have been before such a tribunal. The term imports power to correct error; to prevent injustice.

3. It is undoubtedly within the power of the legislature to fix the limits of the taxing district, and even to determine what property will be specially benefited by a proposed improvement; but it can not go beyond this and determine both the property to be taxed and the amount of the tax for special improvements. The legislative discretion is limited and controlled by the principle that private property can not be taxed for a special improvement, beyond the benefit actually conferred upon it by such improvement, and the ascertainment of such benefit is a judicial, or *quasi* judicial, and not a legislative act. *Norwood* v. *Baker*, 170 U. S. 278.

4. The assessment, in order to be valid, must clearly mark out and identify the property, so that the court can determine, upon inspection, the outlines of the property embraced in the assessment. *Green* v. *Lunt*, 58 Me. 533; *Rokendorff* v. *Taylor's Lessee*, 4 Pet. 362; *Bensinger* v. *Dist. of Col.*, 6 Mack. 287; *McClellan* v. *Dist. of Col.*, 18 D. C. 94.

*Mr. Andrew B. Duvall*, Attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg*, Assistant Attorney, for the appellees:

1. The construction of the law requiring the assessment of benefits against the land of the appellants is not unreasonable. The land of the appellants was considered by Congress as benefited, and as it is "situate and lying on each side of the extension of said streets," it was the duty of the jury to ascertain the extent of benefits, and assess it accordingly.

2. The act is not unconstitutional because in the act itself no provision is made for notice. *Paulsen* v. *Portland*, 149 U. S. 38; *Allman* v. *Dist. of Col.*, 3 App. D. C. 24. But while the act makes no express provision for notice, it nevertheless, by necessary implication, provides for such notice. It fixed a time limit within which the proceeding should be instituted. Complainants are chargeable with notice of the

provisions of the act, and by their own act in making the required dedication made the act operative. The question in this case is simply whether reasonable notice at some serviceable stage of these proceedings has been given to the appellants. It will be noted that this proceeding is distinctly a proceeding *in rem* in the Supreme Court of the District, holding a district court, to charge the land with the assessment, irrespective of its ownership, and not the owners thereof. The matter was committed to the court generally, to be proceeded with as deemed by the court proper, and after such notice as the court, by its order, might require. The court directed the notices to be given, which are contained in the record. It would seem that such notices, supplemented by the implied notice afforded by the act of Congress itself, were ample, and were very obviously effective in this particular proceeding.

3. The act is not unconstitutional because the taxing area was fixed by Congress. *Spencer* v. *Merchant*, 125 U. S. 345; *Parsons* v. *Dist. of Col.*, 170 U. S. 45. But the act did not definitely determine either the property to be taxed or the amount of the tax. Congress found that the property abutting upon the street as extended would be benefited, but did not limit the assessment to that particular property, but also on all or any adjacent land benefited by the opening of the street. It was left to the jury to determine not whether the abutting land was in fact benefited, but the extent of such benefits.

4. The verdict can not be assailed because of alleged gross inequalities respecting the apportionment of benefits. Mills on Eminent Domain, 246; *Shoemaker* v. *United States*, 147 U. S. 242–305.

Mr. Justice MORRIS delivered the opinion of the Court:

The principal questions raised by the assignments of error are two:—1. That of the constitutionality of the act of Congress under which the proceedings have been had;

and 2. That of the sufficiency of the notice given to the appellants in respect of the assessments upon their property.

1. With respect to the first of these questions, we think that it has been conclusively determined for us by the decision of the Supreme Court of the United States in the case of *Norwood* v. *Baker,* 172 U. S. 269. As we understand that decision, which undoubtedly has the effect of greatly qualifying the previous expressions of the same high tribunal upon the matter of special assessments, the limit of assessment on the private owner of property is the value of the special benefit which has accrued to him from the public improvement adjacent to his property. The Supreme Court by Mr. Justice Harlan said in the case of *Norwood* v. *Baker*: "In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation."

In that case there had been, it is true, a gross and most unjustifiable attempt by the public authorities of a municipal corporation to take the property of an individual for the purpose of opening a street through it, and thereafter to assess upon his remaining property which abutted on it the whole cost of the property taken and the cost of the condemnation proceedings,—a most shocking case of confiscation and plunder by public authority under the guise of condemnation and taxation. It was an extreme case; but it awakened the courts to a vigorous assertion of the true principle which should govern in all cases of special assessments made for public improvements. And that principle is, as stated in the case of *Norwood* v. *Baker,* that the value of the special benefit to the adjacent property from the public improvement, and not the cost of the improvement or any part of such cost as such, is the limitation of assessment upon the property. Necessarily, the cost of the improvement is in itself a limitation beyond

which the public authorities can not go in any case; and a proper limit within such limitation beyond which the assessment should not go may well be prescribed by the legislative authority. But it is a logical and necessary consequence from the rule prescribed that the legislative authority may not arbitrarily prescribe a minimum limit below which the assessment may not fall; for the reason that this in itself would be an assessment irrespective of the actual amount of benefit, and the determination of the amount of actual benefit is not a legislative, but a judicial question, upon which the parties in interest are entitled to be heard and to have their day in court.

It is true that, in the enactment in question, the legislative authority recognizes the principle that the assessment is to be made only on property benefited by the improvement, and provides that the assessment shall be made in a judicial proceeding. But it does not leave the question of special benefits to be determined in such proceeding. It arbitrarily finds for itself that the whole adjacent property subject to assessment, or intended to be assessed, will have been specially benefited to the extent at least of one-half of the cost of the improvement; and all that is left to the jury in the judicial proceeding is not to find the value of the special benefit to each adjacent piece of property, but to apportion at least one-half of the cost, and as much more as they may think proper, between the adjacent lots. This, we think, is in direct contravention of the principle enunciated in the case of *Norwood* v. *Baker,* and can not be supported as a valid exercise of legislative authority.

2. We are likewise of opinion that there was no due process of law in this case, inasmuch as the assessment against the property of the appellants was made without notice to them and without opportunity on their part to be heard in regard to it, such as they were entitled to have.

In the case of *Allman* v. *District of Columbia,* 3 App. D. C.

20, we held that "seasonable notice at some serviceable stage of the proceedings is absolutely necessary to the validity of an assessment." Now, that there was no personal notice or personal service of process on the owners of the Kall tract or any of them at any time before the issue of the order of ratification *nisi* on September 19, 1899, is conceded, and could not, of course, be reasonably controverted in view of the record before us; and it would be a mere waste of time and words to argue that the notice then given was "seasonable notice at a serviceable stage of the proceedings." It then appeared plain that the appellants should have had their day in court, and should have been heard; but it was too late. The jury, which had been charged with the duty of making the assessment, and before which they were entitled to appear and to adduce their testimony with reference to the only matter of vital importance to them in the proceeding, the value of the special benefit accruing to their property from the public improvement in question, had been discharged; and the privilege which was then accorded of showing why a judgment should not be rendered upon the verdict, is not the equivalent of a proper trial before the verdict. This, as we have said, is too plain to us to waste words upon it; and it should be said on behalf of the appellees that it has not been contended by them that this notice to the appellants was sufficient.

Neither can we regard the statement of the marshal in his return that the owners of the Kall tract were represented before the jury, as sufficient evidence of that fact, in view of the distinct and unequivocal denial of it by the persons who were supposed to have appeared as such representatives, and who show conclusively by their affidavits, which are not sought in any manner to be controverted or questioned, that they appeared before the jury as witnesses summoned on behalf of the District of Columbia, and not as representatives of the Kall tract, or of the appellants in this case. And, of course, such appearance can not be

construed as a waiver of notice on the part of the appellants. The statement of the marshal was evidently based upon some misapprehension of the facts, and can not be held to be binding upon the parties to the cause.

The reliance of the appellees in this matter of due notice to the appellants is, and in fact their sole reliance must be, upon the order of publication that was issued in the first instance on April 3, 1899, immediately after the filing of the petition, together with the act of Congress itself and the circumstances of that legislation. Now, undoubtedly it is fair to presume that the owners of the Kall tract had some agency in procuring the enactment of the legislation in question; since the proviso that it should become effective only upon their dedication to the public of so much of the land within their tract as was required for the opening of the streets enumerated, implies that representations had been made to Congress on their behalf that such dedication would be made. And that they were aware that a suit was intended to be instituted for the purpose contemplated by the proceedings now before us, is very clear; since they knew that the statute contemplated and directed such a proceeding, and made it mandatory upon the Commissioners of the District to institute the suit within thirty days after the passage of the act, conditioned only upon the dedication by the appellants, which was promptly made by them. The institution of the suit, in fact, was made dependent upon their act of dedication; and they must have known that the suit would necessarily follow that act. But it is not apparent that they are legally and properly chargeable with knowledge beyond this. They were not made parties to the suit, as they well might have been; they were not notified of its institution; they were not notified of any of the proceedings taken under it, until, as we have said, after the order of ratification *nisi* was passed ; and we know of no rule of law that would require them to take notice of its pendency and to make themselves parties

to it for the protection of their own interest, unless it was incumbent on them so to do by the notice of publication directed to be issued by the order of April 3, 1899. And so ultimately upon the sufficiency of this order of publication to bring the appellants before the court depends the validity of the subsequent proceedings as to them.

In our opinion, there is nothing in the suggestion that the proceedings were directed by the statute to be had in the Supreme Court of the District sitting as a District Court of the United States, and that such process would thereupon be sufficient as was appropriate in a district court, which would warrant the substitution of a notice of publication in the place of personal service of process. The district courts of the United States do not proceed by notice of publication instead of personal service of process, any more than do other courts, except when they act as courts of admiralty; and even then, though their proceedings are substantially *in rem*, rather than *in personam*, they can scarcely, in view of the circumstances, be regarded as exceptional. If they were, they would afford no warrant for the present proceeding; for the district court has much other jurisdiction than that of admiralty, in which notice of publication is not to be thought of for a moment as a legal substitute for personal service of process. Notice of publication in modern practice is a purely statutory device to enable the courts of justice to reach property within their jurisdiction when the parties in interest are beyond their jurisdiction and can not be reached by personal process, the ordinary common law and inalienable rights of all persons under ordinary circumstances. And when the statute authorizes such extraordinary process it is usually cumulative, dependent upon the previous issue of the ordinary process, the return of that process unserved, and allegation and proof that the party against whom it has been issued is beyond the jurisdiction of the court. But, unless we except the courts of admiralty, we know of no warrant in our system of jurisprudence for the substitution

of notice by way of publication in a newspaper in the place and stead of the due process of law, beginning with personal service of notice, which is guaranteed to every individual by the common law and by our Federal Constitution.

We do not mean to say that there may not be cases in which, by the nature of an alleged public improvement, all parties, whose property would be affected by it, would be chargeable with notice of its proposed construction, its incidents and consequences; and in which possibly a general notice by way of publication in a newspaper would be all the notice which the circumstances would reasonably allow or require. These are cases in which all persons interested would naturally be put upon notice. But the present is not such a case.

Here there was nothing whatever to put the appellants, or anyone else, upon notice that their property would be assessed. Neither the appellants nor any other owner of property in the neighborhood could tell with any certainty that their or his property was to be assessed. There was no taxing district fixed by the statute. Whether any such taxing district could arbitrarily have been fixed, in view of the decision in *Norwood* v. *Baker*, we need not determine. The statute simply provided that not less than one-half of the amount to be paid for the Tuttle land required for the extension of the proposed streets should be assessed by the jury in the proceedings "against the pieces or parcels of ground situate and lying on each side of the extension of said streets, and also on all or any adjacent pieces or parcels of land which will be benefited by the opening of said streets;" and from this it is very plain that no one could know, in advance of the action of the jury, what property would be declared to be benefited by the proposed extension of the streets. It is impossible even now upon the record to determine upon what theory of benefits the jury proceeded, further than they deemed themselves compelled by the statute to assess the sum of $26,000, which they found

16 Ct. App.—26

to be one-half of the value of the property taken by condemnation, upon the neighboring property, and to find sufficient property to make up that amount. But it is not apparent why they stopped in the middle of the block; and why, for instance, lot 5, in block 13, in Kalorama, was assessed, and lot 6, in the same block 13, was not assessed, when the difference in benefit to the two is utterly impossible to be appreciated; or why, on the south side of the street, lot 25, in block 12, is assessed, and the immediately adjoining lot 24 is not assessed. This is not said in criticism of the jury, the members of which no doubt acted honestly upon their best judgments. But it shows very plainly the impossibility of the determination by anyone, in advance of the action of the jury, that he was within the area of assessment, and therefore that he was bound by the proceedings under the general notice given by way of publication. The owners of lot 6, in block 12, and of lot 24, in block 13, and of the lots west of them, had just as much reason as their neighbors to the east of them at the time of the institution of the proceedings to suppose that they were within the scope of assessment; and the opportunity to parties to be heard in defense of their rights can not be left to depend on any such uncertainty as is here indicated. Unless it appears very plainly from the notice of publication that the appellants were included in it, and must have known from it that they would necessarily be assessed, we can not see upon what principle of sound reasoning they can be held bound by that notice.

There is nothing in the statute to justify the omission of the ordinary personal notice; nor was there anything in the circumstances of the case to warrant it. If it was subsequently required by the order of ratification *nisi*, it must have been upon the ground that it was both proper and necessary. It was then had without difficulty; and there is nothing in the record to suggest that it might not have been had equally well in the first instance. Even if, when

the jury had determined that the property of the appellants had been benefited and would be assessed, notice had then been given to them and they had been cited to appear and offer testimony, if any they had, and they could have been heard before the jury upon the question of assessment, it may be that they would have had the due process of law to which they were entitled. That they did not have this due process, we are compelled to hold.

From what we have said it follows, in our opinion, that there was error in the order or decree of confirmation of the award and findings of the jury in this case, and that, as against the appellants, such award and findings were not warranted by law. The order or decree appealed from will therefore be as to them *reversed; and the cause will be remanded to the Supreme Court of the District of Columbia, with directions to vacate as to them such order or decree, and its order of confirmation nisi, and the award and findings of the jury; and for such other proceedings therein, if any, as may be proper according to law and not inconsistent with this opinion. And it is so ordered.*